UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT PARKER,

    Petitioner,

v.                                             CAUSE NO. 3:19-CV-488-DRL-MGG

WARDEN,

    Respondent.

## OPINION & ORDER

Robert Parker, a prisoner without a lawyer, filed a habeas corpus petition challenging a prison disciplinary proceeding at the Miami Correctional Facility (MCF-19-01-0521) in which a disciplinary hearing officer found him guilty of trafficking in violation of Indiana Department of Correction (IDOC) Offense A-113. Mr. Parker was sanctioned with a loss of 180 days of earned time credits and a demotion in credit class.

The charge was initiated on January 25, 2019 when Sergeant J. Kochensparger wrote a conduct report stating as follows:

> On 1-25-2019 at 11:45 am Ofc. K. Melanson walked into the Kitchen Custody Office, and asked when did Aramark start serving Tostitos? I Sgt. Kochensparger stated "they don't. Why?" Ofc. Melanson informed me that he saw offenders on the Phase 1 side of the Kitchen eating Tostitos. I Sgt. Kochensparger, Ofc. Melanson and Ofc. Washington Immediately went to the Phase 1 side of the kitchen. Upon walking in the Phase 1 side kitchen door from the Production area I saw Aramark staff D. Brown standing in the office eating and holding a bag of Tostitos chips with Offenders Ofd. Hester, Robert# 209507 (E-420) who was sitting down, and Ofd. Parker, Robert# 271068 (E-205) who was standing, each with a handful of Tostitos and a small container of Dip on the table and eating the chips. Once I Sgt. Kochensparger walked in to the office Aramark D. Brown tossed the bag of chips on the table and stated "Those aren't mine." I Sgt. Kochensparger removed both Offenders Hester and Parker and took them to the Production Hallway and got all of their information and sent them back to their housing unit with the Emergency Count. I Sgt. Kochensparger removed the bag of Chips and dip for evidence. I Sgt. Kochensparger notified Captain King of the situation and an Incident Report was completed without further Incident.

ECF 8-1. Officer K. Melanson prepared the following witness statement:

> On 1-25-2019 at 11:42 I went to food service to make some lock changes. I entered the Phase 1 retherm area using the door from dining hall #2. As I started to walk past the Phase 1 Aramark office Aramark worker D. Brown was exiting the phase 1 office. I glanced in and saw 2 offenders in the room. One was standing and the other was eating chips from a bag of tostitos. The type of chips is something that is not normally served at the facility, but I wanted to verify with kitchen staff in case it was something new. I then went and spoke with Sgt Kochensparger about what I had seen. He then went to phase 1 retherm office to address the situation.

ECF 8-5 (alteration omitted).

On January 31, 2019, Mr. Parker was formally notified of the charge (ECF 8-2). He pleaded not guilty and requested a lay advocate, and one was appointed for him (*Id.*; ECF 8-3). He requested witness statements from Julie Dawkins, Donald Gunter, and D. Brown, and also requested that Sergeant Kochensparger's "body cam" be produced to show that he did not have any chips in his hand (ECF 8-2). Before the hearing, Ms. Dawkins submitted the following statement: "On 01/25/19, I, Aramark Supervisor Dawkins, had left some dip in chips in retherm I office. While I was gone Officer Melanson noticed Aramark Supervisor Brown and offender Parker, Robert in the office eating my chips. Offender Parker was not given permission to do so by me at any time." (ECF 8-8) (errors in original). The hearing officer tried to obtain a statement from Ms. Brown, but she was no longer working at the prison (ECF 8-7). A statement was requested from Ms. Gunter, but she stated, "I was not a witness to this incident."[1] (ECF 8-9). Mr. Parker's request for "body cam" evidence from Sergeant Kochensparger was denied because "the kitchen sergeant does not wear a body cam" (ECF 8-10). Mr. Parker obtained a statement from inmate Robert Hester, who stated as follows: "I, Hester,

---

[1] The court notes that the screening report also lists a "Sgt. Williams" as a potential witness, but this name is crossed out (ECF 8-2). It is unclear whether Mr. Parker or someone else crossed out this name, but Mr. Parker does not raise any claim about the need for a statement from Sergeant Williams in the petition. Nor is there anything before the court to indicate that a statement from this individual would have been exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003) (denial of evidence will be considered harmless unless the inmate demonstrates the evidence would have aided his defense); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only entitles inmate to exculpatory evidence).

Robert 209507 did not see Ofdr Parker, Robert with any chips at all at the time of this incident." (ECF 8-6).

On February 6, 2019, the hearing officer held a hearing on the charge (ECF 8-4). Mr. Parker stated as follows in his defense: "I didn't have any chips. I only had a white cup in my hand" (*Id.*). The hearing officer considered staff reports, Mr. Parker's statement, and the witness statements, and found him guilty (*Id.*). Mr. Parker was sanctioned with the loss of 180 days of earned-time credits, the temporary loss of privileges, and a demotion in credit class (*Id.*). Mr. Parker's administrative appeals were denied (ECF 8-11; ECF 8-12; ECF 8-13).

When prisoners lose earned time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charge; (2) an opportunity to be heard before an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

Mr. Parker raises three claims in his petition: (1) that he is not guilty of the offense; (2) that the evidence supported his innocence; and (3) that the charge should be dismissed (ECF 2 at 2-3). All three claims center on his argument that he didn't eat any of the chips. The court understands these claims as an attack on the sufficiency of the evidence.

To satisfy due process, there must be "some evidence" to support the hearing officer's finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). As this circuit has explained:

> This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. . . . It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Prison disciplinary bodies are entitled to resolve conflicts in the stories presented to them, as long as "some evidence" supports their decision. *Johnson v. Finnan*, 467 F.3d 693, 695 (7th Cir. 2006).

The IDOC Adult Disciplinary Code defines "trafficking" as "[g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility warden or designee." ECF 8-14. The conduct at issue does not seem to fit the ordinary case of "trafficking," but the offense is defined quite broadly, and there was evidence that Mr. Parker was "receiving" or "moving" an "unauthorized physical object" when he ate some of the chips stolen from Ms. Dawkins, which were not sold in the prison. Although Mr. Parker claims he didn't eat any of the chips, the account of Sergeant Kochensparger was that Mr. Parker had chips in his hand when the officer saw him. The hearing officer considered all of the witness statements, including those submitted by Mr. Parker, but chose to credit the evidence of his guilt. It is not the province of this court to reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652.

Mr. Parker also suggests that his conduct more closely fit the "B" level offense of "theft of property" (ECF 2 at 3), but an argument based on the proper application of internal prison rules does not present a cognizable basis on which to grant federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). To the extent he is arguing that the sanction imposed against him was too harsh, the sanction was indeed significant based on the underlying conduct, but the court will not find a due process violation if the sanction imposed was within IDOC guidelines. *See Jent v. Warden*, No. 3:19-CV-1017-DRL-MGG, 2020 WL 1323127, 4 (N.D. Ind. Mar. 20, 2020). Mr. Parker was found guilty of an A-level offense, and the maximum allowable punishment for such an offense is a one-level credit-class demotion and up to 6 months of lost earned-time credits. IDOC Disciplinary Code for

4

Adult Offenders, Policy & Admin. Proc. No. 02-04-101. That is the sanction he received. The hearing officer's report reflects that she imposed that sanction in part because of the frequency and nature of Mr. Parker's prior rule violations and his "attitude and demeanor" during the hearing (ECF 8-4). Mr. Parker does not offer any argument to undercut these reasons. He has not established a violation of his due process rights.

For these reasons, the court:

(1) DENIES the habeas corpus petition (ECF 2);

(2) DIRECTS the clerk to enter judgment in this case.

SO ORDERED.

August 10, 2020
*s/ Damon R. Leichty*
Judge, United States District Court